MARY SIMMONS, RESPONDENT, v. UNIVERSAL LIFE INSURANCE CO., APPELLANT.—61 S. W. (2d) 382.

Kansas City Court of Appeals, June 12, 1933.

*G. W. Duvall* and *W. W. Filkin* for respondent.

*Carl W. Johnson* for appellant.

SHAIN, P. J.—This is an action instituted by the mother of Samuel Simmons, a minor, now deceased, to recover on a policy of insurance issued on the life of her said son.

The policy was not attached to the petition in the case for the alleged reason that the policy was in the possession of the defendant company. The plaintiff's petition alleges that the policy was issued on or about the —— day of June, 1929, and that her son died August 5, 1930. The plaintiff alleges that the policy provided for the payment of $186 in event of death.

The action was originally brought in the Justice of the Peace Court and no answer was filed by the defendant. Trial in the Justice of the Peace Court resulted in judgment in favor of the plaintiff and an appeal was taken to the circuit court, where a trial was had before the court, jury being waived. Judgment in the circuit court was for plaintiff in the sum of $186 which was the maximum amount. From the judgment in the circuit court, the defendant has appealed.

A motion has been filed by the respondent asking that appeal be dismissed for the reason that the affidavit for appeal read, "That the defendant, the appellant herein, is *agreed* by the judgment and decision of this Court." "Agreed," of course, should have been aggrieved. The error is clearly clerical. The bill of exceptions was duly signed and certified and filed and duly printed and filed, and prior to the time the cause was set for hearing in this court.

The objection is highly technical and comes too late and is overruled. [Kansas City Masonic Temple ·v. Young, 179 Mo. App. 278; Causey v. Wittig, 11 S. W. (2d) 11.]

The evidence in the case is very conflicting. The testimony of the plaintiff is to the effect that shortly after the death of her son the original policy was turned over to the undertaker and, plaintiff's testimony is to the effect, that the undertaker and the husband of plaintiff took the policy to the office of the insurance agency and left the same there pending, making proof of loss and settlement of the claim and that defendant has never returned the policy. The testimony on the part of plaintiff is that the policy was issued in the spring or early summer of 1929. Plaintiff's testimony being to the effect that the insured lived for over twelve months after the policy was issued. The testimony on behalf of plaintiff is to the effect that the policy provided for the payment of $186 for death occurring after six (6) months after the issuance of the policy. The agreed evidence is to the effect that the son died August 5, 1930, and that he died of tuberculosis. There is no contention but what the policy that was issued was in full force and effect at the time the insured died.

The defendant's testimony is to the effect that defendant had never received the policy. In other words, defendant's testimony is that the undertaker and the husband never brought the policy to the in-

surance office, but that plaintiff reported the original policy as lost and requested a duplicate. The defendant's testimony is further to the effect that in accordance with plaintiff's request that an exact duplicate was prepared and given to plaintiff or plaintiff's attorney. The claimed copy was produced in court and was introduced in evidence by the defendant. The alleged copy provides a minimum of $46.50 if death occurs in less than one year from issuance and a maximum of $186 if death occurs after one year. The duplicate shows issuance as of November 11, 1929, which is less than one year prior to the death. The duplicate further shows a provision that if death occur from tuberculosis at any time before the policy becomes incontestable, then payment shall only be one-fourth of the amount otherwise due. The duplicate shows that the policy becomes incontestable two years after date of issue. The defendant's testimony is all to the effect that the duplicate offered is an exact copy of the policy issued, and is further to the effect that the company only issued insurance of the kind in question in but one form and that is in the form of the one produced. The plaintiff made tender and deposited in court $11.65, which appears to correspond to the amount due if it be conceded that the policy issued corresponded with the alleged duplicate in evidence.

The testimony of the plaintiff is all to the effect that the duplicate offered is not a correct copy, in that the original policy was issued over twelve months before the death and in that the original policy had provision for full payment after the lapse of six months. The evidence of the plaintiff is practically a blank, as to the question as to whether or not the original policy had the tubercular clause. The plaintiff is shown to have pointed to the alleged copy of the policy when testifying and stating that such and such was not in the original policy. No one can tell from the record as presented as to what clauses or provisions were intended to be testified to and concerning. The testimony of the plaintiff, above referred to, is as follows:

"Q. This isn't the policy? A. No, sir.

"Q. Why isn't it the policy? What is it makes you believe it isn't the policy? A. All of this stuff, all this, I remember this as well as if it was yesterday, these things—that duplicate never was on here and this here, that was—it was like that and his age (indicating).

"Q. Yes. A. And this and this out here was $186 (indicating).

"Q. You say this age is all right and the premium is all right, the name is all right and the $186 is all right, is that right?

"Mr. Duval: $186. A. $186.

"Q. (By Mr. Johnson) $186, everything was on there except that minimum death benefit, is that right? A. That stuff wasn't on there.

"Q. This wasn't on there at all (indicating)? A. No, this ain't the policy.

"Q. This isn't the policy at all? A. No.

"Q. You never saw this policy before? A. Never seen it before.

"Q. This isn't the policy that was issued to you after your application for a duplicate, is that right? A. No, it ain't."

The defendant, appellant herein, makes an assignment of errors as follows:

"1. The Court should have sustained the demurrer of appellant submitted at the conclusion of respondent's case.

"2. The Court erred in excluding the testimony of L. A. Knox on the ground of privilege.

"3. That there was no evidence upon which the judgment of plaintiff could be found.

"4. The Court erred in awarding an excessive judgment."

Trial being before the court without a jury and there being no declarations of law asked or given, it follows that the judgment of the circuit court must be upheld if the record presents any reasonable ground for the same.

The defendant, under its first specification, presents the question of failure to file the instrument sued upon and cites Section 815, Revised Statutes 1929. Our courts hold that this section must have reasonable construction and not to extend so as to work an injustice. [Heinrich v. Mo. & Illinois Coal Co., 102 Mo. App. 229, 76 S. W. 674.]

The defendant went to trial without raising the question of omission to file. We conclude that it is too late to raise the question now. [Watkins v. American Yeomen (Mo. App.) l. c. 636, 176 S. W. 516.]

The proper way to raise the issue is by a motion to dismiss. No such motion was filed. We conclude that the averment of the petition to the effect that the defendant had the policy is sufficient, under the facts presented in this case.

The defendant's presentation of its case below was not made upon the theory that defendant was denying liability, but was upon the theory that the liability was only $11.65. We, therefore, conclude the court was not in error in refusing to sustain defendant's demurrer at the conclusion of the evidence.

The defendant in its second assignment of error complains of the action of the trial court in excluding the testimony of L. A. Knox, an attorney who had been consulted by the plaintiff concerning the subject matter of this suit.

On cross-examination of the plaintiff, she was asked why she went to Knox's office. No objection was made to the question and plaintiff gave an explanation in her answer. It is now insisted by the defendant that her answer to questions put to her concerning

1242

matters inquired of her is a waiver of the privilege of communications between lawyer and client. It is a well settled rule that where a client testifies, without objection, to conversations with the client's lawyer, then the client waives the right to object to the testimony of the lawyer. However, the testimony given was concerning matters that did not pretend to go to the merits of the issues presented in this case and we conclude that there was no error in excluding the testimony.

Points three (3) and four (4) presented in the appellant's brief can be considered together. The evidence presented by the plaintiff as to the matters contained in the duplicate policy that she contended were not contained in the original policy does not contradict the evidence to the effect that the policy issued by the company had the "tubercular" clause. It is material to the determination of the amount due to determine the issue of fact as to the presence or absence of this clause. All of the record evidence is to the effect that such clause was in the policy issued by the defendant. The plaintiff presents no evidence from which it can be inferred that said clause was not in the policy issued. Under the facts as shown in evidence, there is no evidence presented that justifies a judgment for $186 or the maximum amount, in view of the fact that it stands admitted that the insured died from tuberculosis.

We, therefore, conclude that there is no evidence that will support the judgment for the amount of $186. For that reason the judgment is reversed and the cause remanded. All concur.